SEALED

FILED
December 7, 2022
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
By: MR
Deputy

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff<br><br>v<br><br>CHRISTOPHER JOHN PETTIT<br><br>Defendant | Case No: SA:22-CR-00653-OLG<br><br>**INDICTMENT**<br><br>COUNTS 1 - 5:  18 U.S.C. § 1343 Wire Fraud<br><br>COUNTS 6 - 8: 18 U.S.C. § 1957 Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity |

THE GRAND JURY CHARGES:

### INTRODUCTION

At all times relevant to this Indictment:

1. Defendant **CHRISTOPHER JOHN PETTIT** ("**PETTIT**"), was an attorney at law, licensed to practice law by the state of Texas, and did business as Chris Pettit and Associates, PC., primarily in and around San Antonio, Texas, within the Western District of Texas. PETTIT also provided services in New Mexico through his law practice.

2. Chris Pettit and Associates, PC., offered clients of the law practice various legal services and investment opportunities.

3. Services included 1031 exchanges, estate planning, escrow holdings and bond investments, among other services.

4. On May 24, 2022, PETTIT filed a Motion for Acceptance of Resignation as Attorney and Counselor at Law of Christopher J. Pettit, asking to terminate his law license.

5.  On June 1, 2022, Chris Pettit and Associates and PETTIT individually filed for bankruptcy under Title 11 of the United States Code, commencing Bankruptcy Case Nos. 22-50591-CAG and 22-50592-CAG.

6.  On June 6, 2022, the Supreme Court of Texas found PETTIT's resignation is in the best interest of the public and profession. PETTIT's law license was canceled.

7.  PETTIT utilized various personal and business bank accounts at, among others, Frost Bank and Wells Fargo Bank.

8.  Among the accounts at Wells Fargo, was an interest on lawyers trust account, known as an "IOLTA" account, styled "Chris Pettit & Associates PC NM IOLTA Acct" number XXXXX9174. This account was in New Mexico. Rule 1.14 of the Texas Rules of Professional Conduct provides in relevant part that "A lawyer shall hold funds and other property belonging in whole or in part to clients or third persons that are in a lawyer's possession in connection with a representation separate from the lawyer's own property. Such funds shall be kept in a separate account, designated as a "trust" or "escrow" account, maintained in the state where the lawyer's office is situated, or elsewhere with the consent of the client or third person...."

## THE SCHEME TO DEFRAUD

9.  Beginning at a time unknown to the United States, but prior to October 7, 2019, and continuing to until on or about July 11, 2022, in the Western District of Texas and elsewhere, the defendant,

## CHRISTOPHER JOHN PETTIT

did knowingly devise and intend to devise a scheme and artifice to defraud clients of Chris Pettit and Associates, PC., and to obtain money and property from such victims by means of false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS OF THE SCHEME TO DEFRAUD

It was part of the scheme and artifice to defraud that:

10. To induce clients to deposit money with Chris Pettit and Associates, PC., defendant sent materially false representations through email, text message, and letters.

**Fraudulent Trusts and Estate Planning Services**

11. Defendant offered his services to clients in estate planning activities, including the formation of living trusts, irrevocable trusts, wills among other estate planning services.

12. Defendant would offer to create trusts in which a client would deposit money and he assured clients that the money would be used for investments for the trust, which was a false representation.

13. For example, as part of the scheme, defendant advised S.O. to create an irrevocable trust wherein S.O. would fund the account. Defendant sent S.O. a letter which confirmed that funds under the management of a trust would remain with a Charles Schwab and Company account.

14. It was further part of the scheme that defendant caused S.O. to wire transfer approximately $11,000,000- to fund an irrevocable trust account. Defendant served as the trustee of the account, which provided him with the means to access the Charles Schwab and Company account and with the ability to move funds. Defendant caused funds from the S.O. account to be wired into his Frost Account without authorization from S.O. and contrary to the representations he had made to S.O. promising to keep the funds in the Charles Schwab and Company trust account.

**Fraudulent High Percentage Bonds**

15. It was further part of the scheme that defendant would induce clients to engage with him by falsely promising to invest their money in high percentage return bonds.

16.     As part of the scheme defendant sent by email, an assurance that the funds of R.T. would be secured at pooled rate not to fall below 9.13% per annum. Defendant provided wire instructions to his Wells Fargo NM Account. This caused R.D. to wire $800,000 on behalf of R.T. for investment. Defendant did not invest those funds on behalf of R.T. in the manner that Defendant had promised.

**Fraudulent 1031 Exchanges**

17.     As part of the scheme, defendant offered 1031 exchange services and told clients he would serve as a Qualified Intermediary (QI). A 1031 exchange is a swap of one real estate investment property for another that allows capital gains taxes to be deferred. Defendant instructed clients to deposit funds from the sale of an asset with his firm for the purpose of holding those funds in escrow for a future 1031 exchange.

18.     Defendant sent via e-mail a letter outlining the parameters of a 1031 exchange. Defendant acknowledged receipt of funds for the 1031 exchange. Defendant assured the 1031 funds would be held in escrow and available at any time for the client.

19.     For example, as part of the scheme, defendant engaged with G.K. and W.K. to serve as a QI for a 1031 exchange. Defendant instructed G.K. and W.K. to wire funds via the closing title company from the sale of an asset to his NM IOLTA account. Defendant promised to hold those funds in escrow pending the purchase of a new asset or withdrawal by G.K. and W.K. Through his false representation, Defendant caused Stuart Title Company G.K. and to wire $907,577.58 on behalf of G.K. and W.K. to defendant's NM IOLTA account #9174. Defendant did not use those funds for a 1031 exchange, contrary to the promises he had made to G.K. and W.K.

20.     It was further part of the scheme that defendant engaged with M.V. and R.V. to serve as a QI for a 1031 exchange. Through his false representation, defendant caused Martin Abstract Title

Company to wire $2,902,911.58 on behalf M.V. and R.V. to defendant's NM IOLTA account #9174. Defendant did not use those funds for a 1031 exchange, contrary to the representations he had made to M.V. and R.V.

**Misuse of Funds**

21. Defendant, and others at his direction, misused the funds provided by his clients.

22. Defendant, and others at his direction, fraudulently misused client funds by transferring money to defendant and others, through, or into, financial accounts and entities controlled by Defendant and others.

23. Defendant used client funds to pay other client debts.

24. Defendant would and did fraudulently use these client funds to support his extravagant lifestyle.

## THE EXECUTION OF THE SCHEME

### COUNTS ONE THROUGH FIVE
### [18 U.S.C. § 1343]

25. Beginning at a time unknown to the United States, but prior to October 7, 2019, and continuing to until on or about July 11, 2022, in the Western District of Texas and elsewhere, the defendant,

### CHRISTOPHER JOHN PETTIT

for the purpose of executing the scheme to defraud and to obtain money or property by means of materially false and fraudulent pretenses, representations, and promises, devised and intended to devise the above-described scheme to defraud multiple clients and to obtain money or property by means of materially false or fraudulent pretenses, knowingly did cause to be transmitted by wire in interstate and international commerce certain signals, writings, and sounds in violation of Title 18, United States Code, Section 1343, as set forth below:

| COUNT | Victim | Date | Item |
|---|---|---|---|
| 1 | S.O. | January 14, 2020 | Wire transfer from S.O. trust account to Pettit Frost Estate Management Account in the amount of $325,000. |
| 2 | S.O. | January 17, 2020 | Wire transfer from S.O. trust account to Pettit Frost Estate Management Account in the amount of $250,000. |
| 3 | G.K. & W.K. | November 4, 2021 | Wire transfer from Stuart Title Company to Pettit's New Mexico IOLTA Account in the amount of $907,577.58. |
| 4 | R.T. | November 9, 2021 | Wire transfer from R.T. Account to Pettit's New Mexico IOLTA Account in the amount of $800,000. |
| 5 | M.V. & R.V. | April 18, 2022 | Wire transfer from First Commercial Bank to Pettit's New Mexico IOLTA Account in the amount of $2,902,911.55. |

## **COUNTS SIX THROUGH EIGHT**
**[18 U.S.C. § 1957]**

26. The Grand Jury incorporate by reference paragraphs 1 through 25 set out above as though fully restate and re-alleged herein.

27. Beginning at a time unknown to the United States, but prior to October 7, 2019, and continuing to until on or about July 11, 2022, in the Western District of Texas and elsewhere, the defendant,

CHRISTOPHER JOHN PETTIT

did knowingly engage and attempt to engage in the following monetary transactions, in and affecting interstate and foreign commerce, by and through and to a financial institution, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, transfer, and exchange of funds and monetary instruments, such property having been derived from specified unlawful activity, to wit, Title 18, United States Code, Section 1343:

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| 6 | January 17, 2020 | Transfer of $800,000 from an Account in Texas to an Account in California. |
| 7 | April 18, 2022 | Transfer of $30,000 from an account in New Mexico to a Martha's Vineyard Account in Massachusetts. |
| 8 | April 21, 2022 | Transfer of $553,712.45 from a New Mexico IOLTA account to a Texas IOLTA account. |

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE
[*See* **Fed.R.Crim.P. 32.2**]

### I.
### Wire Fraud Violations and Forfeiture Statutes
[**Title 18 U.S.C. § 1343, subject to forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)( C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)**]

As a result of the criminal violations set forth in Counts One through Five, the United States of America gives notice to the Defendant CHRISTOPHER JOHN PETTIT of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c), which states the following:

> **Title 18 U.S.C. § 981.**
> **(a)(1)** The following property is subject to forfeiture to the United States:
> * * *
> **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Wire Fraud is an offense constituting "specified unlawful activity" as defined in section 1956(c)(7) of this title.

## II.
## Money Laundering Violations and Forfeiture Statutes
**[Title 18 U.S.C. §1957, subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(1)]**

As a result of the foregoing criminal violations set forth in Counts Six through Eight, the United States of America gives notice to Defendant **CHRISTOPHER JOHN PETTIT** of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 982(a)(1), which states:

> **Title 18 U.S.C. § 982.  Criminal forfeiture**
> **(a)(1)** The court, in imposing sentence on a person convicted of an offense in violation of section 1957 . . . of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

This Notice of Demand for Forfeiture includes, but is not limited to, the following property:

## III.
## Money Judgment

**Money Judgment**: A sum of money equal to an amount which represents the value of any proceeds obtained directly or indirectly, from the Counts described above, for which Defendant **CHRISTOPHER JOHN PETTIT** is liable.

## IV.
## Substitute Assets

If any of the property described above as being subject to forfeiture for the violations set forth above, as a result of any act or omission of Defendant **CHRISTOPHER JOHN PETTIT**:

a. cannot be located upon the exercise of due diligence;
b. has been transferred or sold to, or deposited with, a third party;
c. has been placed beyond the jurisdiction of the court;
d. has been substantially diminished in value; or
e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property, up to the value of said money judgment, as substitute assets pursuant to Title 21 U.S.C § 853(p) and Fed. R. Crim. P. 32.2(e)(1).

A TRUE BILL

FOREPERSON OF THE GRAND JURY

ASHLEY C. HOFF
UNITED STATES ATTORNEY

BY: _____
For ROBERT ALMONTE II
Assistant United States Attorney