FILED

# United States Court of Appeals
## for the Fifth Circuit

FEB 27 2026

· CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY
United States Court of Appeals
Fifth Circuit DEPUTY CLERK

No. 24-50250

**FILED**

February 5, 2026

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee,*

*versus*

CHRISTOPHER JOHN PETTIT,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:22-CR-653-1

## JUDGMENT

Before ELROD, *Chief Judge,* and RICHMAN, and WILLETT, *Circuit Judges.*

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is VACATED, and the cause is REMANDED to the District Court for further proceedings in accordance with the opinion of this Court.

No. 24-50250

The judgment or mandate of this court shall issue 7 days after the time to file a petition for rehearing expires, or 7 days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later. See FED. R. APP. P. 41(B). The court may shorten or extend the time by order. See 5TH CIR. R. 41 I.O.P.



**Certified as a true copy and issued
as the mandate on Feb 27, 2026**

**Attest:**   *Jyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**

FILED

FEB 27 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 5, 2026

Lyle W. Cayce
Clerk

No. 24-50250

UNITED STATES OF AMERICA,

*Plaintiff—Appellee,*

*versus*

CHRISTOPHER JOHN PETTIT,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:22-CR-653-1

Before ELROD, *Chief Judge*, and RICHMAN and WILLETT, *Circuit Judges*.

PER CURIAM:*

Defendant Christopher John Pettit pleaded guilty to three counts of wire fraud (which has a statutory maximum sentence of 20 years) and three counts of money laundering (which has a statutory maximum sentence of 10 years). The district court sentenced Pettit to 180 months' imprisonment on each of the three counts of wire fraud. It declared that the sentences for each

_____

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 24-50250

count were to run consecutively, for a total of 540 months' imprisonment. It sentenced Pettit to 60 months' imprisonment on each of the three counts of money laundering; those sentences run concurrent to each other but consecutive to the wire fraud sentence. In total, the district court sentenced Pettit to 50 years' imprisonment.

Pettit now appeals his convictions and sentences, arguing for the first time on appeal that the district court violated Federal Rule of Criminal Procedure 11(b)(1)(H) by failing to advise him of the correct maximum possible penalties at Pettit's change-of-plea hearing. Applying plain error review, we agree. Accordingly, we VACATE Pettit's guilty plea and REMAND this case to the district court for further proceedings.[1]

I

Because the words used at each stage of this case are of critical importance to Pettit's understanding of his plea, we recount and quote from the record in some detail. Pettit was indicted on five counts of wire fraud, 18 U.S.C. § 1343, and three counts of money laundering, 18 U.S.C. § 1957. Pettit agreed to plead guilty to three counts of wire fraud and three counts of money laundering, and the government agreed to dismiss the two remaining counts of wire fraud. The plea agreement advised Pettit of the following penalties:

---

[1] Pettit also argues that his guilty plea was invalid due to an insufficient factual basis for one of the counts to which he pleaded guilty. Because we vacate Pettit's guilty plea on other grounds, we need not reach this argument.

No. 24-50250

<u>Penalty:</u>

The offenses to which Defendant is pleading guilty carry the following penalties:

Counts 3-5: 18 U.S.C. § 1343 – Wire Fraud

| | |
|---|---|
| Maximum Prison Term | Up to 20 Years |
| Mandatory Minimum Prison Term | Na |
| Maximum Term of Supervised Release | Not more than 3 years |
| Mandatory Min. Term Sup. Release | |
| Maximum Fine | $250,000 |
| Monetary Assessment | $100 |
| Amount of Restitution | To be determined by the Court. |
| Forfeiture | As set forth below. |

Counts 6-8: 18 U.S.C § 1957 – Money Laundering

| | |
|---|---|
| Maximum Prison Term | Up to 10 Years |
| Mandatory Minimum Prison Term | na |
| Maximum Term of Supervised Release | Not more than 3 years |
| Mandatory Min. Term Sup. Release | na |
| Maximum Fine | $250,000 |
| Monetary Assessment | $100 |
| Amount of Restitution | To be determined by the Court. |
| Forfeiture | As set forth below. |

The plea agreement further stated, "Having discussed the statutory range of punishment with Defendant's attorney, Defendant knows that statutory range and still wants to plead guilty in this case." The government also agreed to "not oppose" Pettit receiving a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, so long as he refrained from certain obstructive conduct. Pettit admitted "that the loss amount is no less than $20,000,000 and no more than $65,000,000.

Shortly after signing the plea agreement, Pettit appeared before the district judge for a change-of-plea hearing. The district court asked the prosecutor to summarize the terms of the plea agreement. The following exchange took place:

THE COURT: Okay. There are two counts, right?

PROSECUTOR: Two counts. Yes, Your Honor. There's multiple counts, but essentially two charges, the wire fraud and the money laundering.

3

No. 24-50250

> THE COURT: Money laundering.
>
> PROSECUTOR: Yes, Your Honor.
>
> THE COURT: And the statutory maximum on the wire fraud is 20 years.
>
> PROSECUTOR: That's correct, Your Honor.
>
> THE COURT: And the statutory maximum on the money laundering is ten years.
>
> PROSECUTOR: That's correct, Your Honor.

Then, later in the hearing, the district judge discussed maximum penalties again—this time with Pettit directly:

> THE COURT: Do you understand the maximum possible penalty for wire fraud in Counts Three through Five is 20 years imprisonment?
>
> DEFENDANT PETTIT: Yes.
>
> THE COURT: And you understand that the maximum possible penalty for money laundering in Count Six to Eight is ten years of imprisonment?
>
> DEFENDANT PETTIT: Yes.
>
> THE COURT: And you understand that if you plead guilty to both counts, and knowing those maximum terms, those sentences can be -- can run consecutive.
>
> DEFENDANT PETTIT: Yes, sir.

The Probation Office prepared a 25-page PSR, which contained the following summary of penalties on its first page:

No. 24-50250

| Offense: | **Counts 3-5:**<br>Wire Fraud<br>18 U.S.C. § 1343<br>Not more than 20 years imprisonment/$250,000 fine<br>(Class C Felony)<br><br>**Counts 6-8:**<br>Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity<br>18 U.S.C. § 1957(a)<br>Not more than 10 years imprisonment/$250,000 fine<br>(Class C Felony) |
|---|---|

On page 22, the PSR contained another summary of possible penalties:

**Custody**

94. **Statutory Provisions:** Counts 3-5: The maximum term of imprisonment is 20 years per count. 18 U.S.C. § 1343. Counts 6-8: The maximum term of imprisonment is 10 years per count. 18 U.S.C. § 1957(a).

95. **Guideline Provisions:** Based upon a total offense level of 38 and a criminal history category of I, the guideline imprisonment range is 235 months to 293 months.

The government filed a sentencing memorandum, urging the district judge to "run at least two of Pettit's counts of conviction consecutive to achieve the top-end range sentence, given that the statutory maximum for one count of wire fraud is capped at 20 years." This would be necessary to reach the higher end of the calculated Guidelines range of 235–293 months' imprisonment. The government quoted Guideline 5G1.2(d), which states, "If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively." The Government closed by saying that to "impose a sentence at the top of the Guideline range," the court needed to "order at least two of Pettit's counts of conviction to run consecutively."

Pettit's sentencing memorandum noted that his plea exposed him to "a statutory imprisonment term of not more than 20 years on the Wire Fraud

No. 24-50250

Counts and up to 10 years on the Money Laundering Counts with the possibility of running concurrent or consecutive." Pettit asked for a sentence of 120 months.

At the sentencing hearing, and after confirming with Pettit's counsel that he had no objections to the PSR, the district court stated:

> [T]he applicable guidelines are – because the counts can be joined, the applicable guidelines are 235 to 293 months, which is 24 months at the high end. Of course the Court is free to extend any sentence to the statutory caps. On Count three, four, and five, the maximum punishment is 20 years. And on Counts six, seven, and eight, it's ten years on each count. Of course the Court is free to run all or any of these concurrently or consecutively.

The government repeated its request for the top Guidelines range sentence: 293 months. The district judge then asked the government if it would object to a sentence greater than the top of the Guidelines range. The government indicated that it would not. The district judge sentenced Pettit to 180 months' imprisonment on each of the three counts of wire fraud to run consecutively, for a total of 540 months' imprisonment. He sentenced Pettit to 60 months' imprisonment on each of the three counts of money laundering, running concurrent to each other but consecutive to the wire fraud sentence. This yielded an aggregate sentence of 600 months' (50 years') imprisonment.

On appeal, Pettit contends that the district court reversibly erred by misadvising Pettit of the "maximum possible penalty" at his change-of-plea hearing. See Fed. R. Crim. P. 11(b)(1)(H). In essence, Pettit argues that he was under the mistaken impression that the maximum penalty he could receive after pleading guilty was 30 years, when, in reality, the maximum penalty he could receive was 90 years.

6

No. 24-50250

## II

When a "claim of Rule 11 error was not preserved by timely objection, the plain-error standard of Rule 52(b) applies, with its requirement to prove effect on substantial rights." *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). To show plain error, Pettit must show (1) an error that is (2) "clear or obvious, rather than subject to reasonable dispute" and that (3) affects his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). When these first three requirements are satisfied, this court exercises its discretion to remedy an error if it "seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings." *Id.* (alteration in original) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)). To show that a Rule 11 error affected his substantial rights, Pettit must show "a reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 83.

## III

Pettit argues that the district court committed a clear and obvious error when it failed to ensure that Pettit understood, before pleading guilty, that he faced a maximum prison sentence of 90 years. Pettit further argues that this error affected Pettit's substantial rights because, had Pettit been properly advised of the maximum possible prison sentence, he would not have entered the plea. We agree.

### A

The district court did not correctly inform Pettit of the "maximum possible penalty" that he faced. Fed. R. Crim. P. 11(b)(1)(H). Pettit pleaded guilty to three wire-fraud counts and three money-laundering counts pursuant to a plea agreement. The maximum term of imprisonment for each wire fraud count was 20 years, and the maximum term of imprisonment for each money laundering count was 10 years. 18 U.S.C. §§ 1343, 1957(b)(1).

7

No. 24-50250

Thus, the maximum possible penalty for Pettit's plea was 90 years' imprisonment because the district court could choose to run the sentences consecutively. *See* 18 U.S.C. § 3584(a) ("If multiple terms of imprisonment are imposed on a defendant at the same time, ... the terms may run concurrently or consecutively[.]"). But during the change-of-plea hearing, the district court neither informed Pettit of his 90-year aggregate exposure nor correctly informed Pettit of his exposure per count.

Near the beginning of the hearing, the prosecutor described the plea agreement as a "standard plea agreement" that "outlines the statutory range of punishment for both counts, wire fraud and the [§] 1957 money laundering." The court then asked, "There are two counts, right?" The prosecutor responded: "Two counts. Yes, Your Honor. There's multiple counts, but essentially two charges, the wire fraud and the money laundering." The court repeated the statutory maximum for each of the charges: 20 years for wire fraud and 10 years for money laundering.

Later, the district court informed Pettit that "the maximum possible penalty for wire fraud in Counts Three through Five is 20 years imprisonment" and that "the maximum possible penalty for money laundering in Count Six to Eight is ten years of imprisonment." The Court then informed Pettit that if he "plead[ed] guilty to both counts, and knowing those maximum terms, those sentences can be—can run consecutive."

This explanation would leave a reasonable defendant under the impression that the maximum possible punishment for all three wire-fraud counts together was 20 years and that the maximum possible punishment for all three money-laundering counts together was 10 years. The court's explanation that those sentences "can run consecutive" would, in turn, leave a reasonable defendant under the impression that the maximum aggregate penalty he faced was 30 years.

8

No. 24-50250

This incorrect explanation was a clear violation of Rule 11(b)(1)(H). We have previously held that Rule 11 is clearly violated when a district court informs a defendant of an incorrect, lower maximum penalty. *United States v. Alvarado-Casas*, 715 F.3d 945, 954 (5th Cir. 2013) ("[F]or the district court to inform [the defendant] that he faced only a ten-year maximum sentence" when the maximum sentence was twenty years "was clear and obvious"). Here, the district court incorrectly informed Pettit that the maximum possible penalty was 30 years, not 90.

We need not and do not hold that Rule 11 is clearly violated whenever a district court does not explain that the sentences may or must run consecutively to one another, so long as it provides an accurate breakdown of the maximum penalty per count. *Cf. United States v. Saldana*, 505 F.2d 628, 628 (5th Cir. 1974) (holding no violation of Rule 11 occurred where district court failed to inform the defendant that his sentence would run consecutive to sentence he was already serving). But here, the district court did not inform Pettit of the correct maximum penalty per count, and it affirmatively *misinformed* Pettit as to the total aggregate sentence he could face should his sentences run consecutively to one another. Under these circumstances, Rule 11(b)(1)(H) was clearly and obviously violated.

B

This Rule 11 error affected Pettit's substantial rights. "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *Dominguez Benitez*, 542 U.S. at 83. We review the entire record to determine whether "the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "The reasonable-probability

No. 24-50250

standard is not the same as, and should not be confused with, a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." *Id.* at 83 n.9. The focus for this inquiry is on "whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." *United States v. Powell*, 354 F.3d 362, 367 (5th Cir. 2003) (quoting *United States v. Johnson*, 1 F.3d 296, 302 (5th Cir. 1993) (*en banc*)).[2]

The district court's incorrect admonishment regarding the maximum possible penalty Pettit faced meets this standard. Pettit was 56 years old when he pleaded guilty. With a maximum punishment of 30 years, release before death was possible, particularly with credit for time spent in pretrial detention and eligibility for other credits. With a maximum punishment of 90 years, however, being released before death becomes increasingly less likely, though it depends on the sentence actually imposed.

The government argues that any misimpression Pettit had that he faced a maximum of 30 years' imprisonment was corrected: (1) when Pettit reviewed his PSR with counsel and (2) when the district court explained the maximum possible sentence at Pettit's sentencing. Neither argument is persuasive.

---

[2] In *Powell*, the defendant objected at the district-court level to the Rule 11 violation, so our court reviewed under the harmless-error standard rather than for plain error. 354 F.3d at 367; *see* Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). But the "substantial rights" inquiry under plain-error review is "akin to the 'substantial rights' analysis employed in preserved-error casers under the harmless error provisions of Rule 52(a)." *United States v. Miranda*, 248 F.3d 434, 445 (5th Cir. 2001). *Compare* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

No. 24-50250

*First*, the government maintains that page 22 of the PSR states that the maximum penalty of 20 years for wire fraud and 10 years for money laundering, respectively, is "per count." We have held that if a defendant gains knowledge of the correct maximum penalty after reviewing his PSR, his substantial rights may not have been affected by a Rule 11 error. *See United States v. Alvarado-Casas*, 715 F.3d 945, 954 (5th Cir. 2013). In *Alvarado-Casas*, for example, the district court incorrectly admonished the defendant that he faced a maximum of ten years' imprisonment. *Id.* at 948. But the PSR "correctly stated that [the defendant] faced a statutory maximum of 20 years of imprisonment." *Id.* at 954. Moreover, the PSR calculated the Guidelines range to be 188 to 235 months' imprisonment. *Id.* at 949.

Here, the PSR did not similarly correct any misimpression that Pettit may have had of his maximum possible sentence. Paragraph 94 of the PSR on page 22 states:

> **Statutory Provisions:** Counts 3-5: The maximum term of imprisonment is 20 years per count. 18 U.S.C. § 1343. Counts 6-8: The maximum term of imprisonment is 10 years per count. 18 U.S.C. § 1957(a).

But the PSR never states that the sentences for each count can run consecutively. And the very first page of the PSR groups the wire-fraud counts together for a maximum penalty of 20 years' imprisonment and the money-laundering counts together for a maximum penalty of 10 years' imprisonment:

11

No. 24-50250

| Offense: | **Counts 3-5**:<br>Wire Fraud<br>18 U.S.C. § 1343<br>Not more than 20 years imprisonment/$250,000 fine<br>(Class C Felony)<br><br>**Counts 6-8**:<br>Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity<br>18 U.S.C. § 1957(a)<br>Not more than 10 years imprisonment/$250,000 fine<br>(Class C Felony) |
|---|---|

The PSR thus did not correct the district court's misstatement at the change-of-plea hearing—the PSR reinforced it. And the counts were similarly grouped in Pettit's written plea agreement.

That is a far cry from *Alvarado-Casas*, in which the PSR clearly stated the correct statutory maximum penalty for the single-count guilty plea. 715 F.3d at 948, 954. Moreover, the recommended Guidelines range in *Alvarado-Casas* was inconsistent with the defendant's claimed understanding of his maximum sentencing exposure. *See id.* at 954. Here by contrast, the PSR recommended a Guidelines range of 235 to 293 months' imprisonment, which is below 30 years and thus is consistent with the district court's admonishment at the change-of-plea hearing: that "both counts" of wire fraud and money laundering could run consecutively. In other words, the two types of counts—wire fraud and money laundering—could run consecutively to one another for an aggregate maximum of 30 years.

*Second*, the government argues that the district court correctly advised Pettit of his maximum sentencing exposure at the sentencing hearing. At sentencing, the district court said: "On Count three, four, and five, the maximum punishment is 20 years. And on Counts six, seven, and eight, it's ten years on each count. Of course the Court is free to run all or any of these concurrently or consecutively." The district court did not confirm that Pettit

No. 24-50250

understood this statement. The first part of that statement *again* improperly grouped the three wire-fraud counts together for a maximum sentence of 20 years. In context of the "entire record," this passing statement by the district court did not correct its prior misstatement. *Dominguez Benitez*, 542 U.S. at 80.

Moreover, the government cites no case in which we have held that a defendant's failure to object *at sentencing* after being correctly advised of the consequences of his guilty plea gives rise to the inference that his substantial rights were not affected. As we explained earlier, we have held that if a defendant gains knowledge of the correct maximum penalty after reviewing his PSR, his substantial rights may not have been affected by a Rule 11 error. *See Alvarado-Casas*, 715 F.3d at 954. But the PSR is provided in writing 35 days prior to sentencing, Fed. R. Crim. P. 32(e)(2), and defendants have 14 days to object to the report, Fed. R. Crim. P. 32(f)(1). A defendant's failure to speak up at a sentencing hearing when the district court correctly states the maximum penalty for the first time does not, without more, give rise to an inference analogous to that in our cases regarding correct admonishments of penalties in PSRs.[3]

## C

We exercise our discretion to correct this error. Under plain-error review, we may correct errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Young*, 470 U.S. 1, 15 (1985) (quoting *Atkinson*, 297 U.S. at 160). This case presents such an error. The right to a jury trial, guaranteed by the Sixth Amendment, is a

---

[3] This would be a different case if, for example, the district court at sentencing had more clearly articulated that the maximum penalty was 90 years and confirmed in a colloquy with Pettit that he wanted to go forward with his guilty plea and sentencing.

No. 24-50250

"constitutional protection[] of surpassing importance." *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000). Consequently, "[t]he integrity of the plea bargaining system," which results in a defendant relinquishing that important right, is "vital to our national system of criminal justice." *United States v. Palmer*, 456 F.3d 484, 491 (5th Cir. 2006) (quoting *United States v. Ashburn*, 20 F.3d 1336, 1347 (5th Cir. 1994)). "Maintaining that integrity requires diligently policing its failure to function properly." *Id.* So our discretion is properly exercised here.

## IV

For the reasons above, we VACATE Pettit's guilty plea and REMAND this case to the district court for further proceedings.